Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| YAZMÍN LISETTE SANTOS TORRES<br><br>Apelante<br><br>v.<br><br>CARIBBEAN TEMPORARY SERVICES, LLC; CARIBBEAN TEMPORARY SERVICES HOLDINGS, LLC; CCL PUERTO RICO, INC. H/N/C CCL LABEL SABANA GRANDE; INDIVIDUOS A, B, C, D Y E; ASEGURADORAS X, Y, Z<br><br>Apelados | TA2026AP00379 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso número: PO2024CV01702<br><br>Sobre: Hostigamiento Sexual; Acoso Laboral; Discrimen en el Empleo por Razón de Sexo, Represalias |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 29 de mayo de 2026.

Comparece la parte apelante, Yazmín Lisette Santos Torres, y nos solicita que revoquemos la *Sentencia* emitida el 13 de marzo de 2026, notificada el día 16 del mismo mes y año, por el Tribunal de Primera Instancia, Sala Superior de Ponce. Mediante dicho dictamen, el foro primario declaró Ha Lugar las Mociones de Sentencia Sumaria promovidas por las partes apeladas, Caribbean Temporary Services LLC, Caribbean Temporary Services Holdings LLC y CCL Puerto Rico, Inc., h/n/c CCL Label Sábana Grande. En su consecuencia, desestimó la *Demanda* en su totalidad, incoada por la apelante en su contra. Asimismo, en cuanto a la Moción de Sentencia Sumaria instada por la apelante, la declaró No Ha Lugar.

Por los fundamentos que exponemos a continuación, se confirma la *Sentencia* apelada.

**I**

El 18 de junio de 2024, Yazmín Lisette Santos Torres (Santos Torres o apelante) incoó una *Demanda*[1], sobre hostigamiento sexual, acoso laboral, discrimen en el empleo por razón de sexo y represalias, en contra de Caribbean Temporary Services LLC, Caribbean Temporary Services Holdings LLC (en conjunto, CTS) y CCL Puerto Rico, Inc., h/n/c CCL Label Sábana Grande (en conjunto, CCL) (ambas compañías, parte apelada). Santos Torres alegó que varios empleados de CCL le hicieron avances indeseados de índole sexual, misógino y sugestivo. Adujo que dichos acercamientos interferían con su trabajo y crearon un ambiente intimidante, hostil u ofensivo. Sostuvo que CCL incumplió con su deber de mantener un centro de trabajo libre de hostigamiento sexual y que permitió el acoso laboral sin tomar medidas necesarias para eliminarlo o reducirlo. Además, alegó que CCL incurrió en represalias en su contra al moverla de área de trabajo, por haber denunciado las conductas de acoso laboral y hostigamiento sexual de los empleados de CCL. Asimismo, adujo, en cuanto a CTS, compañía que se dedica a satisfacer las necesidades de empleo temporero, que aunque realizó investigaciones en cuanto a las denuncias presentadas por Santos Torres, no tomó acción efectiva a su favor.

En respuesta, el 22 de julio de 2024, CCL presentó su *Contestación a la Demanda*[2]. En síntesis, negó las alegaciones de hostigamiento sexual, acoso laboral, discrimen en el empleo por razón de sexo y represalias aducidas por Santos Torres. Sostuvo que actuó conforme a sus políticas y en beneficio de Santos Torres. Adujo que se realizaron las investigaciones necesarias y que

---

[1] Entrada Núm. 1 del Caso PO2024CV01702 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[2] Entrada Núm. 5 del Caso PO2024CV01702 en el SUMAC.

ninguna de las acciones tomadas por CCL, directa o indirectamente relacionadas con el empleo de Santos Torres, estuvieron motivadas por ánimo discriminatorio y/o de represalia alguno. Además, adujo que Santos Torres renunció libre y voluntariamente a su puesto.

Por su parte, el 24 de julio de 2024, CTS presentó su propia *Contestación a Demanda*[3]. Igualmente negó las alegaciones en su contra y alegó que, como compañía de empleo temporero, no tiene potestad ni autoridad de determinar asignaciones de trabajo o traslados de área en las compañías clientes. Adujo que tampoco tiene injerencia ni autoridad sobre ningún empleado regular de las compañías clientes a las que presta servicios.

Así las cosas, luego de múltiples trámites procesales, el 29 de octubre de 2025, Santos Torres presentó una *Moción de Sentencia Sumaria*[4]. En síntesis, alegó que no hay controversia en cuanto a que fue víctima de acoso laboral, hostigamiento sexual y represalias. Además, adujo que CTS incumplió con su deber como patrono, de protegerla y de brindar un empleo libre de hostigamiento sexual, acoso laboral y represalias. Sostuvo también que, tanto CTS como CCL, incumplieron con su deber de investigar adecuadamente las tres querellas instadas por esta en contra de los empleados regulares de CCL.[5]

---

[3] Entrada Núm. 8 del Caso PO2024CV01702 en el SUMAC.

[4] Entrada Núm. 44 del Caso PO2024CV01702 en el SUMAC.

[5] Tanto CCL como CTS se opusieron a la moción de sentencia sumaria promovida por Santos Torres. El 1 de diciembre de 2025, CCL presentó su *Oposición a Solicitud de Sentencia Sumaria* (Entrada Núm. 70 del Caso PO2024CV01702 en el SUMAC). En resumen, alegó que no tomó ninguna acción adversa en contra de Santos Torres por razón de su sexo ni por las quejas presentadas por esta. Adujo que, por el contrario, tanto CCL como CTS actuaron con diligencia sobre las quejas presentadas y que Santos Torres no puede sustentar ninguna de las alegaciones de hostigamiento sexual, acoso laboral, discrimen por género ni represalias. Por su parte, en la misma fecha, CTS en su *Oposición de CTS a Moción de Sentencia Sumaria de la Parte Demandante* (Entrada Núm. 69 del Caso PO2024CV01702 en el SUMAC) adujo que las causas de acción en su contra deben ser desestimadas, ya que no fueron sus empleados los que cometieron los alegados actos de hostigamiento, discrimen o represalias. Sostuvo que, además, todas las quejas presentadas por Santos Torres fueron atendidas apropiadamente y que esta renunció por no estar a gusto con la máquina a la que fue asignada a trabajar, sin haber solicitado reasignación o reconsideración a CCL.

El 30 de octubre de 2025, CCL presentó su propia *Moción de Sentencia Sumaria*[6]. En resumen, alegó que la causa de acción presentada por Santos Torres por acoso laboral y hostigamiento sexual estaba parcialmente prescrita. Adujo, además, que Santos Torres renunció voluntariamente a su empleo, luego de esta ser asignada a una máquina específica y que manifestó su inconformidad con las compañeras de trabajo que laboraban en la nueva estación. Sostuvo que la propia Santos Torres admitió que, el mismo día en que renunció, no tenía intención alguna de renunciar a su puesto. Asimismo, alegó que actuó con diligencia y prontitud, que activó los protocolos correspondientes, realizó las investigaciones pertinentes y que reubicó a Santos Torres en áreas seguras, con el fin de evitar cualquier otra situación con los querellados. Señaló, que Santos Torres admitió que no fue objeto de amonestaciones, suspensiones o cambio en las condiciones de empleo, por lo que el foro primario debía desestimar la *Demanda* en su contra.[7]

Por su parte, el 17 de noviembre de 2025, CTS también presentó una *Moción de Sentencia Sumaria de Caribbean Temporary Services (CTS)*[8]. Sostuvo que ninguno de los hechos alegados por Santos Torres fue realizado por CTS, por sus empleados ni sus agentes, sino que dichas alegaciones fueron dirigidas a actos realizados por CCL o sus empleados. Adujo que no hay alegación alguna, ni prueba de que CTS o uno de sus empleados o agentes haya realizado actos discriminatorios o de hostigamiento sexual.

---

[6] Entrada Núm. 47 del Caso PO2024CV01702 en el SUMAC.
[7] El 25 de noviembre de 2025, Santos Torres presentó su *Oposición a Moción de Sentencia Sumaria de CCL* (Entrada Núm. 65 del Caso PO2024CV01702 en el SUMAC). En síntesis, alegó que los daños alegados no se limitaron a incidentes aislados, sino que consisten en una persistencia de un ambiente hostil generado por las actuaciones de los empleados agresores y por la omisión del patrono de adoptar medidas correctivas y apropiadas. Adujo que las actuaciones de CCL la expusieron repetidamente a los mismos riesgos y crearon un ambiente degradante, humillante e incompatible con la dignidad humana.
[8] Entrada Núm. 52 del Caso PO2024CV01702 en el SUMAC.

Además, alegó que tanto CCL como CTS activaron sus protocolos internos y realizaron las investigaciones correspondientes. Sostuvo también, que Santos Torres le expresó que se sentía cómoda y segura en su horario de trabajo, siempre y cuando uno de los querellados no se le acercara, y que estaba satisfecha al haber sido asignada a un área cerca de los supervisores. Del mismo modo, señaló que Santos Torres admitió que su decisión de renunciar se debió a su descontento con la resignación de máquina, no a ninguna acción de hostigamiento o represalia y que, además, al renunciar, CTS le ofreció ubicarla en otra compañía, pero esta se negó. A base de ello, sostuvo que procedía desestimar sumariamente la *Demanda* en su totalidad.[9]

Analizadas las posturas, el 13 de marzo de 2026, el foro primario emitió la *Sentencia*[10] que hoy nos ocupa. Mediante el referido dictamen, el foro sentenciador declaró Ha Lugar las mociones de sentencia sumaria promovidas por CCL y CTS. En su consecuencia, desestimó la *Demanda* incoada por Santos Torres en su contra. Asimismo, en cuanto a la moción de sentencia sumaria instada por Santos Torres, la declaró No Ha Lugar.

El foro sentenciador concluyó que no hay controversia en cuanto a que Santos Torres participó de una actividad protegida, al presentar quejas ante CCL y CTS. Expresó, sin embargo, que no es posible establecer un nexo causal entre la acción protegida y la culminación de su empleo. Señaló, además, que Santos Torres no fue objeto de amonestación, cambio en su condición de empleo o salarios a raíz de la presentación de las quejas. Aclaró que la

---

[9] El 1 de diciembre de 2025, Santos Torres presentó su *Oposición a Sentencia Sumaria de CTS* (Entrada Núm. 66 del Caso PO2024CV01702 en el SUMAC). En resumen, alegó que CTS responde solidariamente por sus propios actos y omisiones como patrono directo de Santos Torres. Además, adujo que CTS conocía de las querellas presentadas, que omitió intervenir adecuadamente, no investigó de manera independiente, validó sin cuestionamiento los informes inconclusos de CCL e incumplió con su obligación de garantizar un ambiente laboral libre de hostigamiento y represalias.
[10] Entrada Núm. 74 del Caso PO2024CV01702 en el SUMAC.

reasignación de máquina a Santos Torres respondió a las medidas inmediatas y apropiadas realizadas por CCL, en el curso normal de la empresa y con el propósito de asegurar que esta no estuviese trabajando cerca de los querellados. Concluyó que Santos Torres decidió culminar su relación obrero-patronal con CCL y CTS libre y voluntariamente.

Inconforme, el 13 de abril de 2026, Santo Torres acudió ante este Foro mediante el recurso de apelación y señaló los siguientes errores:

> Erró el Tribunal de Primera Instancia al resolver sumariamente controversias genuinas de hecho que requerían juicio, aquilatando credibilidad y otorgando valor probatorio a unas versiones sobre otras.
>
> Erró el Tribunal de Primera Instancia al aplicar una definición jurídica incorrecta de hostigamiento sexual y discrimen por razón de sexo, y al utilizarla para predeterminar el resultado del análisis sumario.
>
> Erró el Tribunal de Primera Instancia al interpretar restrictivamente la Ley Núm. 115 de 20 de diciembre de 1991 y al adjudicar sumariamente los elementos de represalia.
>
> Erró el Tribunal de Primera Instancia al aplicar incorrectamente el término prescriptivo de la Ley Núm. 90-2020, computándolo desde actos aislados y no desde el patrón continuo de incumplimiento patronal.
>
> Erró el Tribunal de Primera Instancia al denegar sentencia sumaria a favor de la demandante pese a hechos no controvertidos establecidos en la Sentencia del Tribunal Primera Instancia que establecían la responsabilidad de las codemandadas.

Evaluado lo anterior, el 15 de abril de 2026, emitimos y notificamos una *Resolución,* en la que dispusimos que la parte apelada tendría treinta (30) días para presentar su alegato.

En cumplimiento con dicha *Resolución,* el 15 de mayo de 2026, CCL presentó su *Alegato en Oposición a Apelación.* En dicho escrito, alegó que el foro primario determinó correctamente, a base de la prueba presentada, que las reclamaciones de Santos Torres son inmeritorias. En específico, sostuvo que CCL tomó acción inmediata y apropiada para investigar los alegados incidentes, y que adoptó medidas cautelares y razonables para evitar cualquier

situación futura. Además, sostuvo que Santos Torres no cumplió con los elementos de una causa de acción de discrimen por sexo. Reiteró que la razón de la renuncia presentada por Santos Torres no fue por ninguna conducta relacionada a las quejas presentadas, sino que fue por la reasignación de máquina y su negativa de trabajar junto a una empleadas, a quienes catalogó como "problemáticas". De igual manera, adujo que había transcurrido más de un (1) año desde la culminación de la primera investigación, hasta el momento en que instó su reclamación, por lo que la causa de acción estaba prescrita. Además, sostuvo que era inevitable la desestimación del presente caso. Ello, ya que la misma Santos Torres admitió que no recibió amenazas, no fue sancionada, no sufrió ninguna reducción salarial, y que no hubo intervención alguna por parte de supervisores en represalia por sus quejas.

Así las cosas, el 14 de mayo de 2026, CTS presentó una *Moción Solicitando Prórroga para Someter Alegato de la Parte Apelada*, en la que nos solicitó un término adicional de diez (10) días para presentar su Alegato. Considerada la referida petición, el 15 de mayo de 2026, emitimos una *Resolución*, mediante la cual concedimos la prórroga solicitada.

En cumplimiento con nuestra orden, CTS presentó un escrito titulado *Alegato de CTS en Oposición a Apelación* el 26 de mayo de 2026. En esencia, alegó que la parte apelada tomó acción inmediata para atender las quejas presentadas por la apelante y que dichas acciones fueron efectivas y terminaron con el hostigamiento alegado. Además, reiteró que la apelante indicó que se sentía cómoda y segura en su horario de trabajo y admitió estar satisfecha al haber sido asignada a un área cerca de los supervisores. Adujo que no hay ninguna alegación en su contra por represalias, por lo que se desestimó correctamente dicha causa de acción. En fin, alegó que el foro primario realizó determinaciones de hecho debidamente

sustentadas por la evidencia presentada, por lo que procede confirmar la *Sentencia* apelada.

Con el beneficio de la comparecencia de las partes, procedemos a disponer del asunto ante nuestra consideración.

## II

## A

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, es un vehículo para asegurar la solución justa, rápida y económica de un caso. *Batista Valentín v. Batista Valentín,* res. 1 de octubre de 2025, 2025 TSPR 93; *Cooperativa de Seguros Múltiples de Puerto Rico y Popular Auto, LLC. v. Estado Libre Asociado de Puerto Rico,* res. 5 de agosto de 2025, 2025 TSPR 78; *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981 (2023); *Oriental Bank v. Caballero García*, 212 DPR 671 (2023). Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 979-980 (2022). Este mecanismo lo puede utilizar, tanto la parte reclamante, como aquella parte que se defiende de una reclamación. 32 LPRA Ap. V, R. 36.1 y 36.2.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues permite agilizar el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Segarra Rivera v. Int'l. Shipping et al.*, supra. Como se sabe, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba

incontrovertible sobre todos los elementos indispensables de su causa de acción. *Íd.*

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3; *Oriental Bank v. Caballero García,* supra; *Pérez Vargas v. Office Depot,* 203 DPR 687, 698 (2019). Si la parte promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 111 (2015).

Por otro lado, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *León Torres v. Rivera Lebrón,* supra*,* pág. 43. Por el contrario, quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho la parte promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *Íd.*

Por ello, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3. *Íd.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Íd.* De lo anterior, se puede colegir que, ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil de 2009, *supra,* la consideración de sus posiciones descansa en la sana discreción del Tribunal.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *E.L.A. v. Cole,* 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues solo procede si bajo ningún supuesto de hechos la parte promovida prevalece. *Íd.,* pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia y ser consciente, en todo momento, que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra*,* pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o

credibilidad. *Cruz, López v. Casa Bella y otros*, 213 DPR 980, 993 (2024); *Acevedo y otros v. Depto. Hacienda y otros*, supra; *Segarra Rivera v. Int'l. Shipping et al.*, supra. Un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *BPPR v. Zorrilla y otro*, 214 DPR 329, 338 (2024); *Oriental Bank v. Caballero García,* supra, pág. 7; *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).

Ahora bien, el Tribunal Supremo ha reiterado que cualquier duda no es suficiente para derrotar una moción de sentencia sumaria, pues debe tratarse de una incertidumbre que permita concluir que existe una controversia real sobre hechos relevantes y pertinentes. *Íd.* Además, existen casos que no se deben resolver mediante sentencia sumaria, porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001).[11] De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Íd.* No obstante, la sentencia sumaria procederá si atiende cuestiones de derecho. *Universal Ins. y otro v. ELA y otros*, 211 DPR 455, 472 (2023).

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro primario. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119. Sobre ese particular, nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de

---

[11] Sobre este punto, véase, además, *Soto v. Hotel Caribe Hilton*, 137 DPR 294, 311 (1994); *Audiovisual Lang. v. Sist. Est. Natal Hnos.*, 144 DPR 563, 577 (1997).

forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

*Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, nos encontramos en la misma posición para evaluar la procedencia de una sentencia sumaria. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc.*, res. 7 de enero de 2025, 2025 TSPR 1; *BPPR v. Zorrilla y otro*, supra; *Birriel Colón v. Econo y otro*, 213 DPR 80, 91 (2023). Por ello, nuestra revisión es *de novo* y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra*, así como de su jurisprudencia interpretativa. *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601, 611 (2023). A tenor con la referida normativa, dicha revisión se realizará de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el foro de origen y luego de realizar todas las inferencias permisibles a su favor. *Birriel Colón v. Econo y otro*, supra; *Meléndez González et al. v. M. Cuebas*, supra, pág. 118. De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, nos corresponde revisar *de novo* si el foro primario aplicó correctamente el derecho. *González Meléndez v. Mun. San Juan et al.*, supra.

**B**

La *Ley para Prohibir el Hostigamiento Sexual en el Empleo*, Ley Núm. 17 de 22 de abril de 1988, según enmendada, 29 LPRA sec. 155 *et seq.* (Ley Núm. 17-1988), establece que el hostigamiento sexual en el empleo, infringe directamente la inviolabilidad del ser humano y equivale a un claro discrimen contra la persona en el campo de trabajo. *Exposición de Motivos* de la Ley Núm. 17-1988,

*Íd.* El precitado estatuto dispone que el hostigamiento sexual en el empleo constituye,

> [...] cualquier conducta sexual indeseada que ocurre en la relación de empleo y afecta las oportunidades de empleo, el empleo mismo, sus términos y condiciones o el ambiente de trabajo de la persona. Este se manifiesta de diversas formas desde insinuaciones de tipo sexual directa o indirectas que pueden llegar desde los actos más sutiles y disimulados de contacto físico hasta la agresión sexual simple o agravada. *Íd.*

De igual manera, en su Artículo 3, la mencionada ley describe en que consiste el hostigamiento sexual y en que circunstancias se puede llevar a cabo. A saber, expresa que,

> [...] consiste en cualquier tipo de acercamiento sexual no deseado, requerimientos de favores sexuales y cualquier otra conducta verbal o física de naturaleza sexual o que sea reproducida utilizando cualquier medio de comunicación incluyendo, pero sin limitarse, al uso de herramientas de multimedios a través de la red cibernética o por cualquier medio electrónico, cuando se da una o más de las siguientes circunstancias:
>
> (a) Cuando el someterse a dicha conducta se convierte de forma implícita o explícita en un término o condición del empleo de una persona.
>
> (b) Cuando el sometimiento o rechazo a dicha conducta por parte de la persona se convierte en fundamento para la toma de decisiones en el empleo o respecto del empleo que afectan a esa persona.
>
> (c) Cuando esa conducta tiene el efecto o propósito de interferir de manera irrazonable con el desempeño del trabajo de esa persona o cuando crea un ambiente de trabajo intimidante, hostil u ofensivo. Ley Núm. 17-1988, 29 LPRA sec. 155b.

Respecto al inciso (c) del precitado artículo, este recoge la modalidad de hostigamiento sexual por ambiente hostil. Esta modalidad sucede cuando la conducta sexual hacia un individuo interfiere irrazonablemente con el desempeño en su trabajo o crea en este un ambiente intimidante, hostil u ofensivo. *Indulac v. Unión,* 207 DPR 279, 308 (2021); *Rodríguez Meléndez v. Sup. Amigo, Inc.,* 126 DPR 117 (1990). En cuanto a la determinación de si constituye hostigamiento sexual en el empleo, se considerará la totalidad de las circunstancias y a base de los hechos de cada caso. Ley Núm. 17-1988, 29 LPRA sec. 155c.

Por otro lado, esta ley le impone responsabilidad a los patronos, no solo por los actos de hostigamiento sexual en los que estos o sus supervisores incurran, sino también por el hostigamiento sexual entre sus empleados si sabían o debían estar enterados de tal conducta. Ley Núm. 17-1988, 29 LPRA secs. 155d-e; *Casillas Carrasquillo v. ELA*, 209 DPR 240, 250 (2022). Ello, "a menos que el patrono pruebe que tomó una acción inmediata y apropiada para corregir la situación". *Íd.* En lo pertinente, "[u]na acción inmediata y apropiada es aquella que razonablemente terminará sin demora los actos de hostigamiento sexual y evitará su repetición de manera efectiva". *Íd*, citando a *Albino v. Ángel Martínez, Inc.*, 171 DPR 457 (2007).

Cónsono con lo anterior, el Artículo 10 de la Ley Núm. 17-1988, *supra*, dispone que:

> Todo patrono tiene el deber de mantener el centro de trabajo libre de hostigamiento sexual e intimidación y deberá exponer claramente su política contra el hostigamiento sexual ante sus supervisores y empleados y garantizará que puedan trabajar con seguridad y dignidad. Cumpliendo con la obligación que se le impone al patrono de prevenir, desalentar y evitar el hostigamiento sexual en el empleo, éste deberá tomar las medidas que sean necesarias o convenientes con ese propósito incluyendo[...]
>
> [...]
>
> (d) Establecer un procedimiento interno adecuado y efectivo para atender querellas de hostigamiento sexual. 29 LPRA sec. 155i.

Lo antes esbozado, constituye unas guías mínimas dirigidas al patrono, para que este adopte, a su discreción, las que entienda convenientes e implante una política pública efectiva en contra del hostigamiento, con el propósito de cumplir con el deber afirmativo impuesto por la precitada ley. *Casillas Carrasquillo v. ELA*, supra, pág. 251; *Indulac v. Unión*, supra, pág. 310.

### C

La Constitución del Estado Libre Asociado de Puerto Rico, en su Artículo II, Sección 1, establece que la dignidad del ser humano

es inviolable. Art. II, Sec. 1, Const. ELA, LPRA, Tomo 1. Este precitado artículo prohíbe cualquier discrimen por razón de raza, color, sexo, nacimiento, origen o condición social, o ideas políticas o religiosas. *Íd.* Por su parte, el discrimen al que se refiere el mencionado artículo es aquella "desigualdad por prejuicio o por arbitrariedad, sin que exista un fundamento razonable para la falta de trato igual". *Garib Bazaín v. Hosp. Aux. Mutuo et al*, 204 DPR 601, 630-631 (2020); *Meléndez v. Asoc. Hosp. Del Maestro*, 156 DPR 828 (2002).

En línea con lo anterior, la *Ley para garantizar la Igualdad de Derecho al Empleo*, Ley Núm. 69 de 6 de julio de 1985, según enmendada (Ley Núm. 69-1985), dispone que es práctica ilegal en el empleo lo siguiente:

(1) cuando por razón de su sexo, suspenda, rehúse emplear o despida cualquier persona, o que de cualquier otra forma **discrimine contra una persona, con respecto a su compensación, términos o condiciones de empleo**.

(2) cuando por razón de su sexo límite, divida o clasifique sus empleados o a las personas que soliciten para un empleo, en cualquier forma que la pueda privar o tienda a privar a esa persona de una oportunidad de empleo **o que de cualquier otra forma le pueda afectar adversamente su condición como empleado**. (Énfasis Nuestro). Artículo 3 de la Ley Núm. 69-1985, *supra*.

Ello, con el fin de garantizar la igualdad de derecho al empleo tanto para los hombres como para las mujeres, prohibiendo actuaciones que promuevan el discrimen por razón de sexo. *López Fantauzzi v. 100% Natural*, 181 DPR 92, 125 (2011).

**D**

La *Ley Contra el Despido Injusto o Represalias a Todo Empleado[(a)] por Ofrecer Testimonio Ante un Foro Legislativo, Administrativo o Judicial*, Ley Núm. 115 de 20 de diciembre de 1991, según enmendada, 29 LPRA sec. 194 *et seq.* (Ley Núm. 115-1991), provee una protección para la persona empleada frente a represalias que tome un patrono contra esta por haber provisto

testimonio, expresión o información en algún foro judicial, legislativo o administrativo. *Feliciano Martes v. Sheraton*, 182 DPR 368, 392 (2011); *S.L.G. Rivera Carrasquillo v. A.A.A.*, 177 DPR 345, 361 (2011); *Ocasio v. Kelly Servs.*, 163 DPR 653, 684 (2005). Es decir, la Ley Núm. 115-1191, *supra*, prohíbe que un patrono despida, amenace o discrimine contra un empleado con relación a los términos y condiciones de su empleo, incluyendo beneficios, compensación, entre otros, porque ofrezca o intente ofrecer información o testimonio ante un foro legislativo, administrativo o judicial. 29 LPRA sec. 194a(a). *Cordero Jiménez v. Universidad de Puerto Rico*, 188 DPR 129, 136 (2013); *Rentas Santiago v. Autogermana, Inc.*, 182 DPR 759, 765 (2011). A tenor con ello, se le otorga a la persona empleada una causa de acción si, por realizar una actividad protegida, es despedida, amenazada o discriminada en el empleo. *S.L.G. Rivera Carrasquillo v. A.A.A.*, supra; *Rivera Prudencio v. Mun. De San Juan*, 170 DPR 149, 159 (2007); *Cintrón v. Ritz Carlton*, 162 DPR 32, 37 (2004).

El Artículo 2 de la Ley Núm. 115-1191, *supra*, establece que cualquier persona que alegue una violación al estatuto puede instar una acción civil en contra de su patrono dentro del término de tres (3) años de que ocurra la violación y solicitar que "se le compense por los daños reales sufridos, las angustias mentales, la restitución en el empleo, los salarios dejados de devengar, beneficios y honorarios de abogado". 29 LPRA sec. 194a(b). Ahora bien, para establecer un caso de represalias bajo la Ley Núm. 115-1991, *supra*, el empleado puede: (a) probar mediante evidencia directa o circunstancial un nexo causal entre la conducta del patrono y el daño que sufrió, o (b) establecer un caso *prima facie* mediante evidencia que demuestre que: (1) que participó en una de las actividades protegidas por la Ley Núm. 115-1991, *supra*, y (2) que subsiguientemente su patrono lo despidió, amenazó o lo discriminó

(nexo causal). 29 LPRA sec. 194a(c). *Rivera Menéndez v. Action Service,* 185 DPR 431, 445, citando a *Feliciano Martes v. Sheraton,* supra. Una vez la persona empleada establezca lo anterior, "el patrono deberá alegar y fundamentar una razón legítima y no discriminatoria para el despido". *Íd.* Si el patrono logra establecerlo, la persona empleada debe demostrar que la razón alegada por el patrono realmente era un mero pretexto para el despido. *Íd.*; *Feliciano Martes v. Sheraton,* supra; *S.L.G. Rivera Carrasquillo v. A.A.A.,* supra, pág. 362; *Hernández v. Espinosa,* 145 DPR 248 (1998).

**E**

La prescripción es un asunto de derecho sustantivo y no procesal. *García Pérez v. Corp. Serv. Mujer,* 174 DPR 138, 147 (2008); *Padín v. Cía. Fom. Ind.,* 150 DPR 403, 410 (2000). El Artículo 1189 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 9481, establece que "[l]a prescripción es una defensa que se opone a quien no ejercita un derecho o acción dentro del plazo de tiempo que la ley fija para invocarlo[...]". A esos efectos, el precitado artículo dispone que, "[l]as acciones prescriben por el mero lapso del tiempo fijado por ley". *Nevárez Agosto v. United Surety et al.,* 209 DPR 346 (2022); *Conde Cruz v. Resto Rodríguez et al.,* 205 DPR 1043, 1067 (2020). El propósito de la figura de la prescripción extintiva es ponerles certidumbre a las relaciones jurídicas y castigar la inacción de quien no ejerce sus derechos de manera oportuna. *Birriel Colón v. Econo y otro,* 213 DPR 80 (2023); *Santos de García v. Banco Popular,* supra.

Los términos prescriptivos varían según el tipo de derecho o acción. En lo referente al caso de autos, las causas de acción sobre acoso laboral bajo la *Ley para Prohibir y Prevenir el Acoso Laboral en Puerto Rico,* Ley Núm. 90 de 7 de agosto de 2020, según enmendada, 29 LPRA sec. 3111 *et seq* (Ley Núm. 90-2020), prescriben pasado el término de un (1) año. Ello, a partir del momento en que el empleado

se sintió sometido al acoso laboral alegado. Ley Núm. 90-2020, *supra*, 29 LPRA sec. 3122.

Esbozada la norma jurídica, procedemos a resolver el asunto ante nuestra consideración.

**III**

En primer lugar, cabe destacar que, como foro apelativo intermedio, estamos llamados a revisar *de novo* las solicitudes de sentencia sumaria adjudicadas por el foro primario. Ello, puesto que el Tribunal Supremo ha sido enfático en que nos encontramos en la misma posición que el foro *a quo* para adjudicar la procedencia de una moción de sentencia sumaria.

A tenor con ello, y luego de examinar cuidadosamente *de novo* el trámite procesal, el expediente ante nos, los escritos de las partes, así como la normativa aplicable, estamos en posición de acoger por referencia las relaciones de hechos incontrovertidos formuladas por el foro primario. Luego de evaluar la totalidad del expediente ante nuestra consideración, colegimos que no existen controversias sobre hechos medulares que impidan la disposición de la presente causa por la vía sumaria.

En su primer señalamiento de error, la parte apelante alega que el foro primario erró al resolver sumariamente controversias genuinas de hecho. Sostiene que requería la celebración de un juicio para aquilatar credibilidad y otorgar valor probatorio a unas versiones de los hechos sobre otras. No tiene razón.

Tal como hizo constar el foro sentenciador en su dictamen, y este Foro pudo validar como parte de su análisis *de novo*, los hechos incontrovertidos están sustentados en la prueba presentada. La parte apelante presentó tres (3) quejas distintas sobre dos empleados regulares de CCL. La prueba presentada por los apelados demostró que cada una de las quejas fueron investigadas, tanto por CCL como por CTS. Más aun, las compañías tomaron medidas

cautelares en beneficio de la apelante. A saber, se reunieron con cada uno de los querellados para impartirles advertencias de no acercarse a la apelante; separaron a la apelante de los querellados en el área de trabajo, moviéndola de máquina; y ubicaron a la apelante cerca de los supervisores para esta sentirse más segura, entre otras medidas.

En cuanto a la primera queja presentada por la apelante, luego de realizada una investigación sobre el asunto, la misma fue cerrada el 20 de abril de 2023. En la notificación sobre el cierre, la propia apelante expresó, en su puño y letra, que "[f]ui orientada por CTS acerca del cierre del caso. Todo ha estado bien dentro del área de trabajo sin ning[ú]n percance hasta el momento."[12]

Luego de la apelante presentar otra queja en contra de un segundo querellado, la prueba presentada demostró que se realizó la correspondiente investigación y que se tomaron medidas cautelares en beneficio de la apelante. Asimismo, demostró que la apelante expresó estar satisfecha de ser movida de área de trabajo, a un lugar más cerca de los supervisores.

Por otro lado, la prueba presentada demostró que, a pesar de la apelante presentar una tercera queja, esta se refería a un mensaje recibido por la red social de Facebook. Ahora bien, la propia apelante admite que no tenía conocimiento concreto de que el mensaje hubiera sido enviado por el querellado.[13] Aun con dicha incertidumbre, CCL tomó medidas provisionales de reubicar a la apelante, antes de investigar la queja presentada. Además, la prueba demostró que el 3 de enero de 2024, CCL envió una carta al querellado y le exhortó a mantener su cumplimiento con las expectativas de comportamiento y desistir de cualquier

---

[12] Exhibit 18 en la Entrada Núm. 47 del Caso PO2024CV01702 en el SUMAC.
[13] Pág. 62 del Exhibit 19 en la Entrada Núm. 47 del Caso PO2024CV01702 en el SUMAC.

acercamiento físico y/o comunicación con la apelante, dentro y fuera del trabajo.[14]

Surge también de la prueba que, varios días después, el 10 de enero de 2024, la apelante renunció a su puesto. La apelante expresó que la razón de su renuncia fue "[p]orque me pusieron en esa máquina, con empleadas que llevan más de veinte años, son personas bastantes [*sic*] problemáticas, nadie quiere trabajar con ellas, le pregunté al supervisor, cu[a]nto tiempo yo iba a estar ahí, me dijo que era indefinido. Y lo encontré como un castigo."[15] Cabe destacar, además, que la apelante admitió que, en los días previos a su renuncia, específicamente en los días 8, 9 y 10 de ese mes, no tuvo interacción alguna ni contacto físico con el querellado.[16]

De igual manera, queda claro que la reubicación de la apelante de máquina y área de trabajo no se debió a represalias. Por el contrario, respondió a dos asuntos. Primero, que la apelante no tenía un área específica designada, sino que el trabajo era uno rotativo por distintas máquinas de la compañía. Segundo, que se le reubicó como medida cautelar de seguridad, luego de esta presentar las querellas. Incluso, se movió a un área más cerca de los supervisores, de lo cual la apelante expresó estar satisfecha.

A la luz de la prueba presentada, no hay controversia en cuanto a los hechos esenciales en el caso de autos. La prueba demostró que la parte apelada realizó las investigaciones pertinentes, tomó medidas cautelares en beneficio de la apelante y que esta renunció por razones completamente ajenas a las quejas previamente presentadas.

---

[14] Exhibit 34 en la Entrada Núm. 47 del Caso PO2024CV01702 en el SUMAC.
[15] Pág. 81 del Exhibit 19 en la Entrada Núm. 47 del Caso PO2024CV01702 en el SUMAC.
[16] Págs. 76-77 del Exhibit 19 en la Entrada Núm. 47 del Caso PO2024CV01702 en el SUMAC.

Por no existir hechos materiales en controversia, correctamente procedía la disposición de la presente causa por la vía sumaria. No se cometió el primer error.

En su segundo señalamiento de error, la parte apelante sostiene que erró el foro de instancia al aplicar una definición jurídica incorrecta de hostigamiento sexual y discrimen por razón de sexo.

La Ley Núm. 17-1988, *supra*, define el hostigamiento sexual como "cualquier tipo de acercamiento sexual no deseado, requerimientos de favores sexuales y cualquier otra conducta verbal o física de naturaleza sexual[...]" Artículo 3 de la Ley Núm. 17-1988, *supra*. En cuanto a la manera del acercamiento, establece que estos pueden ser reproducidos "utilizando cualquier medio de comunicación incluyendo, pero sin limitarse, al uso de herramientas de multimedios a través de la red cibernética o por cualquier medio electrónico[...]" *Íd.* Requiere, además, al menos una de las circunstancias descritas en la precitada ley, entre las que se encuentra, en lo pertinente a la controversia que nos ocupa: "(c) [c]uando esa conducta tiene el efecto o propósito de interferir de manera irrazonable con el desempeño del trabajo de esa persona o cuando crea un ambiente de trabajo intimidante, hostil u ofensivo." *Íd.*

Entonces, para que se cumpla con esta definición jurídica de lo que es el hostigamiento sexual, se deben analizar tres elementos esenciales a la luz de los hechos del presente caso. A saber, primero, un acercamiento sexual no deseado; segundo, que sea reproducido utilizando cualquier medio de comunicación; y tercero, que interfiera de manera irrazonable con el trabajo o cree un ambiente intimidante, hostil u ofensivo.

En este caso, la apelante alega haber recibido acercamientos sexuales no deseados por parte de los querellados. En cuanto al

método de reproducción, alega que fueron acercamientos personales y a través de la red social de Facebook. Ahora bien, en cuanto al tercer elemento, el foro de instancia concluyó que no se configuró un patrón de hostigamiento en contra de la apelante, ya que las alegaciones o quejas fueron oportunamente atendidas y la alegada conducta ilícita cesó.

En este caso, la propia apelante expresó, en cuanto a las quejas investigadas y cerradas, que estaba satisfecha con las medidas tomadas y que luego de cada investigación, los querellantes no repitieron la conducta del alegado hostigamiento. Referente a la última queja, donde la apelante reportó el mensaje recibido por Facebook, tanto CCL, como el foro primario, correctamente concluyeron que el mensaje no era de naturaleza sexual. Más aun, no existe ninguna conexión ni prueba de que el mensaje en efecto hayo sido enviado por el querellado.

En cuanto al discrimen por razón de sexo, la Ley Núm. 69-1985, *supra*, dispone que es práctica ilegal y que constituye tal discrimen cuando, por razón de sexo, se "discrimine contra una persona, con respecto a [...] condiciones de empleo", o "de cualquier [...] forma le pueda afectar adversamente su condición como empleado." Artículo 3 de la Ley Núm. 69-1985, *supra*. Cabe destacar que la práctica ilegal se refiere a que tal discrimen sea "sin que exista un fundamento razonable para la falta de trato igual." *Garib Bazaín v. Hosp. Aux. Mutuo et al,* supra.

En este caso, no hubo ningún cambio en las condiciones del empleo de la apelante. Aunque la apelante intenta argumentar que su reubicación de área de trabajo fue discriminatoria por razón de sexo, la realidad es que el trabajo siempre fue rotativo. La apelante nunca estuvo asignada de manera permanente a una máquina o área específica dentro de CCL. Además, en el momento en que se le reubicó como medida cautelar, la prueba demostró que no se

reubicó al querellado, ya que este ocupaba el puesto de cortado, los cuales se encuentran ubicados en unas máquinas en específico, en el medio de la fábrica. Por ello, no se podía reubicar de área al querellado.

El foro primario correctamente aplicó la definición jurídica de discrimen por sexo y concluyó que no se configuró. No se cometió el segundo error.

En el tercer señalamiento de error, la apelante alega que erró el foro sentenciador al aplicar restrictivamente la Ley Núm. 115-1991, *supra*, y adjudicar sumariamente los elementos de represalia.

La mencionada Ley Núm. 115-1991, *supra*, prohíbe que un patrono despida, amenace o discrimine contra un empleado, con relación a los términos y condiciones de su empleo, incluyendo beneficios, compensación, entre otros, porque ofrezca o intente ofrecer información o testimonio ante un foro legislativo, administrativo o judicial. *Cordero Jiménez v. Universidad de Puerto Rico,* supra. Para una causa de acción bajo esta ley, el empleado debe demostrar dos cosas. Primero, que participó en una actividad protegida y, segundo, que de manera subsiguiente, su patrono lo despidió, amenazó o discriminó. 29 LPRA sec. 194a(c). Ahora bien, no es suficiente que ocurran esas dos cosas, sino que tiene que haber un nexo causal entre ambas. O sea, que a raíz de la actividad protegida es que el patrono despidió, amenazó o discriminó al empleado.

En el caso ante nos, la apelante sostiene que, a causa de la presentación de las quejas, CCL tomó represalias en su contra, al reubicarla de área de trabajo. Sin embargo, la prueba demostró, tal como lo discutimos anteriormente, que la reubicación se debió a dos asuntos. Primero, el puesto de la apelante era uno de naturaleza rotativa dentro de las distintas máquinas de CCL y, segundo, se le reubicó como medida cautelar para alejarla de los querellados. Aun

interpretando liberalmente la precitada ley, hubo razones legítimas para la reubicación de área de trabajo de la apelante. Al no haber controversias en cuanto a estos hechos, no existía impedimento para que el foro *a quo* lo resolviera sumariamente. No se cometió el tercer error.

En su cuarto señalamiento de error, la parte apelante alega que el foro primario aplicó incorrectamente el término prescriptivo de la Ley Núm. 90-2020, *supra,* al hacer el cómputo desde actos aislados y no desde el patrón continuo de incumplimiento patronal. Aduce que la conducta alegada constituyó una secuencia reiterada y progresiva, desde mensajes por redes sociales, acercamientos físicos en el área de trabajo, conductas persistentes de vigilancia, comunicación indebida y acecho.

La Ley Núm. 90-2020, *supra,* dispone, referente a la controversia ante nuestra consideración, que el término prescriptivo para una causa de acción bajo la precitada ley es de un (1) año, "[…] a partir del momento en que el empleado se sintió sometido al acoso laboral alegado." 29 LPRA sec. 3122. En cuanto a esto, el foro sentenciador concluyó que el término prescriptivo de la causa de acción por acoso, por los actos del primer querellado, comenzó a partir de la fecha en que se notificó la culminación de la investigación. Dicha notificación se realizó el 20 de abril de 2023. En esa misma fecha, la apelante expresó que "[t]odo ha estado bien dentro del área de trabajo sin ning[ú]n percance hasta el momento."[17]

En este caso, la apelante presentó su *Demanda* el 18 de junio de 2024, es decir, catorce (14) meses luego de la mencionada notificación. Tal como concluyó el foro primario, la causa de acción por los actos del primer querellado estaba prescrita. Más aun, la

---

[17] Exhibit 18 en la Entrada Núm. 47 del Caso PO2024CV01702 en el SUMAC.

precitada ley específicamente dispone que el término prescriptivo comienza en el momento en que el empleado se sintió sometido al alegado acoso. Por lo que, la fecha en que verdaderamente comenzó a transcurrir el término fue antes del 20 de abril de 2023, ya que en esa fecha fue que se notificó el cierre de la investigación, y no la fecha en que comenzó el alegado acoso. No se cometió el cuarto error.

Luego del análisis realizado con el propósito de atender el quinto señalamiento de error, consideramos que los planteamientos formulados en este no requieren mayor discusión. Ello, ya que a la luz de la prueba presentada procedía dictar sentencia sumaria a favor de la parte apelada y no a favor de la aquí apelante.

En virtud de lo anterior, colegimos que el Tribunal de Primera Instancia no erró la emitir la *Sentencia* apelada. En fin, al evaluar concienzuda y ponderadamente *de novo* los eventos procesales al palio de la norma jurídica antes esbozada, coincidimos con la determinación del foro apelado.

**IV**

Por los fundamentos que anteceden, confirmamos el dictamen apelado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones